Jones, J.
 

 It was stated by counsel in oral argument that the form of entry of appointment of receivers, and their general authority as such, is a stock or standard printed form utilized by the courts of Cuyahoga county whenever a receiver is appointed.
 

 There is a clear distinction, it seems to us, between the express and implied authority conferred upon operating receivers of railroads or industrial establishments and a receiver who is merely appointed to take charge of property and collect rents, as in this case. This distinction is recognized in
 
 Lehigh Coal & Nav. Co.
 
 v.
 
 Central Rd. Co. of N. J.,
 
 35 N. J. Eq., 426, where Mr. Justice Bradley is quoted as saying of a railroad receiver: “It may be laid down as a general proposition that all outlays made by the receiver in good faith, in the ordinary course, with a view to advance and promote the business of the road, and to render it profitable and successful, are fairly within the line of discretion which is necessarily allowed to a receiver entrusted with the management and operation of a railroad in his hands. His duties, and the discretion with which he is invested, are very different from those of a passive receiver, appointed merely to collect and hold moneys due on prior transactions, or rents accruing from houses and lands.”
 

 But even in the case of operating receivers of a railroad, if the expenditures are extraordinary, and involve a large outlay of money, the receiver should
 
 *131
 
 first apply to the court and obtain authority for making the expenditures. This seems to be the rule announced in the case last cited, and also in
 
 Union Trust Co.
 
 v.
 
 Illinois Midland Rd. Co.,
 
 117 U. S., 434, 6 S. Ct., 809, 29 L. Ed., 963. See, also, 1 Clark on Receivers (2d Ed.), Section 378.
 

 The property in this case was an apartment house consisting of several suites. Under the order of the court the receiver was appointed only to “take charge of the property described during the pend-ency of this action.” He was given authority to pay insurance premiums, water, coal, gas and light bills. These expenditures are not challenged. What is challenged here is the broad and seemingly unrestricted authority of the receiver “to make such repairs as are necessary for the proper maintenance of the property in his charge.” If this authority, found in the order of his appointment, means, as it seems to mean, that the receiver is authorized to make any and all repairs on the apartment premises at his discretion, without advance application to the court, and without notice to the interested parties, then such an order is an unwise exercise of the power of the chancellor which may vitally affect the rights of lienholders who are entitled to be heard upon the nature and extent of the proposed expenditures.
 

 Section 11897, General Code, reads: “Under the control of the court, the receiver may * * * take and keep possession of the property, receive rents, * * * and generally do such acts respecting the property as the court authorizes.” We would not interfere with the discretion of a receiver in making immediate minor repairs upon rented property without previous application to the court under au
 
 *132
 
 thority so conferred upon him, if the existing or probable income therefrom by way of rents justifies it; nor would we deny him discretion to make minor emergency expenditures to conserve the property. However, whether such repairs are emergency or otherwise, if they are of such unusual or substantial character as to require a substantial sum for their payment, it becomes the duty of the receiver to apprise the court of the necessity and extent of such repairs and to apply to the court for authority to make them; and it then becomes the duty of the court to give to the parties in interest notice of such application, thus giving them an opportunity to be heard. Naturally large expenditures made by the receiver upon mortgaged property enhance the value of the mortgagee’s lien, and cases might arise where their allowance would prejudice the rights of the owner or of junior lienholders. Allowance of expenditures by the court as costs is tantamount to placing a lien upon the property prior to that of other liens. The expenditures made by the receiver in this case, without authority of court, were not for minor emergency repairs, but were very substantial in amount. The record presents no reason why the receiver did not apply to the court for authority to make such expenditures, and give notice of his application to the parties in interest, and there was ample time for him to have done so. Although a full report of the receiver is not contained in this record, counsel states that the report of the receiver, covering the several months of his incumbency from January to May, disclosed that, while he had made expenditures of $1,173.37 upon the apartments, he had collected only a total of $12 rental from the entire eight
 
 *133
 
 suites. . There might be reason justifying the expenditures if their payment could reasonably have been expected to be made out of income or rents derived during the receivership. But in this case they are paid from and made a prior lien upon the corpus of the property. Another cogent reason why the expenditures should not have been allowed over the objection of the savings bank is that the premises were offered for sale in July, 1930. The receiver did not report these expenditures until August 4, 1930. Meanwhile neither bidder nor the junior lienholder, the savings bank, had knowledge that these expenditures allowed as costs had been incurred by the receiver when the sale was made. Since it appeared that at the time of sale the proceeds of sale were sufficient to pay both the first and second mortgage, and the costs, the second mortgagee might rest content to have the sale made at the price bid; whereas, had it known that these additional costs would jeopardize its lien, the second mortgagee might have become a bidder for the property in order to secure the full amount of its lien. The better practice would be for the receiver to submit his report of the amount of expenditures incurred prior to the time the property was put up for sale. The parties in interest must be held to have known that the ordinary costs of the action, including reasonable fees for the receiver and his attorney, would follow the suit; but, with the probable exception of the trust company, other lien-holders apparently did not know until after the sale that these extraordinary expenditures would be allowed as costs, thus becoming a lien upon the property, to be deducted from the bid price.
 

 The court is of the opinion that the utilized stand
 
 *134
 
 ard form, appointing receivers and clothing them with apparently unlimited authority to make substantial repairs at their discretion, without first applying to the court — a form used in this case — does not conform to equitable principles, and that the order to make substantial repairs, such as appears here, without first applying to the court therefor, and without giving notice to the parties immediately interested, as well as the order of allowance thereafter, were erroneous and prejudicial to the plaintiff in error.
 

 The judgments of the lower courts are reversed, and the case is remanded to the court of common pleas, with instructions to disallow the items of expenditure amounting to $1,173.37.
 

 Judgment reversed and cause remanded.
 

 Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.
 

 Marshall, C. J., not participating.