BERNHARD ET AL., APPELLANTS, *v.* O'BRIEN, TREAS., ET AL., APPELLEES.

(No. 7809—Decided December 21, 1953.)

*Messrs. Paxton & Seasongood,* for appellants.

*Mr. Henry M. Bruestle,* city solicitor, and *Miss Isabel Guy,* for appellee city of Cincinnati.

*Mr. C. Watson Hover,* prosecuting attorney, and *Mr. Carl B. Rubin,* for appellees auditor and treasurer of Hamilton County.

MATTHEWS, P. J. The plaintiffs seek to enjoin the enforcement of a lien against their property to secure a sewer assessment in the amount of $195.06 and a street assessment of $473.60, levied by the city of Cincinnati. The original defendants were the county treasurer and the county auditor. Later, on its application, to which no objection was made, the city of Cincinnati was made a party defendant. All defendants filed answers.

The cause was submitted to the Common Pleas Court on the pleadings and an agreed statement of facts. That court found for the defendants and entered judgment in their favor, dissolving the temporary restraining order theretofore granted and dismissing the action at the plaintiffs' costs. It is from that judgment that this appeal on questions of law was taken.

The essential facts as shown by the pleadings and agreed statement are:

In 1930 and 1931, the city of Cincinnati levied two special assessments against the real estate known as 3117 Roosevelt Avenue, Cincinnati, Ohio, of which the plaintiffs are the present owners, to pay a part of the cost of constructing a sewer and improving the street upon which it abutted. The assessments not having been paid, they were duly certified to the county auditor pursuant to Section 3905, General Code (Section 727.60, Revised Code). The sewer assessment totaling $673.60, was payable in ten equal annual installments, and, the time in which to pay in cash expiring, they were duly certified to the county auditor.

On February 15, 1932, the owners of the property at that time commenced an action in the Court of Common Pleas of Hamilton County, Ohio, praying for an injunction against the collection of these assessments. A temporary restraining order was granted and this was made permanent on final hearing, and the county auditor in compliance therewith removed the assessment installments then due from the current tax duplicate, but continued to carry them on a tax list card upon which data relating to said property was noted, one of the notations being: "Temporarily enjoined in Case A-30807." No change was made in this notation at any time.

On appeal, the Court of Appeals dissolved the injunction and on February 9, 1934, entered a judgment

ordering a total reduction of $200 in the assessments, "said deduction to be ratably made from each of the several unpaid installments, and the collection of which amount deducted is hereby permanently enjoined." The cause was remanded to the Court of Common Pleas for execution. For some reason, not disclosed by the record, no notice was taken of this judgment until 1952 when they placed charges against this property on the tax duplicate of 1951, based on these assessments.

In October 1943, an action in partition was instituted by an heir of the owners at the time of the levy of the assessment against the other heirs. The county auditor and county treasurer were made parties to this action and both filed answers and prayed that if the land be sold, their rights be protected and that the amount of the taxes and assessments be paid before any other claims. On April 4, 1944, a decree in partition was entered and on June 2, 1944, the property was ordered sold. On August 14, 1944, the sale to John Kaldy for $1,010 was confirmed and the sheriff ordered to convey the premises to the purchaser. The decree of distribution ordered the payment of $295.81 to the county treasurer, "being the taxes and penalties due on said premises." The balance was distributed to the clerk of courts as costs and to the owners according to their interest in the property. The amount ordered paid to the treasurer was accepted by him.

John Kaldy, the purchaser at the sheriff's sale, conveyed the premises to his wife, Frances Kaldy, by deed dated August 22, 1944, and Frances Kaldy and her husband conveyed the premises by warranty deed to Vincent Kroeger on January 5, 1950, and he, together with his wife, conveyed the premises to Elmer E. Bernhard and Martha E. Bernhard, the plaintiffs in this action, by warranty deed, dated October 10, 1950.

From this statement, it can be seen that the last installment of the sewer assessment became due in 1934, and the last installment of the street assessment became due in 1939. All prior unpaid installments were delinquent at that time.

And it can also be seen that it presents questions of statutory construction and the legal effect, if any, of the partition proceeding. We shall begin with a consideration of the matter of statutory construction.

It is the contention of the appellees that these assessments, notwithstanding the removal of the past due installments from the current tax duplicate in 1932 and their nonappearance on any subsequent duplicate until 1952, were, nevertheless, on the duplicate as that term is used in the statutes. It is their claim that this results from the fact that during all these years these assessments were noted on a so-called "tax list card" maintained by the auditor in his office. It is not claimed that the auditor delivered a similar "tax list card" to the county treasurer. This "tax list card" is not described in the record in any way. To have the effect claimed for it, it is necessary to assume that it is a part of a document conforming to the statutory requirements of the "general tax list and general duplicate," as prescribed by Sections 2583 and 2594, General Code. In Section 2583, General Code (Section 319.28, Revised Code) the Legislature first takes notice of the fact that there are several taxing districts within the county—township, city, village, and school districts—and imposes upon the auditor the duty of compiling separate duplicate lists of the names of the owners of real estate and public utilities subject to tax in each taxing district and then enacts that "on or before the first Monday in September of each year, the county auditor shall correct such lists in accordance with the additions and

deductions ordered by the Tax Commission of Ohio, and by the county board of revision, and shall certify and on the first day of October deliver one copy thereof to the county treasurer. The copies prepared by the county auditor shall constitute the auditor's general tax list and treasurer's general duplicate of real and public utility property for the current year."

It requires the application of no technical rules of interpretation to determine the legislative intent in this enactment. The law authorizes two general county-wide tax lists and no more. One is retained by the auditor and one is delivered to the treasurer. The one retained by the auditor is given the name of "general tax list" and the one delivered to the treasurer the name of "general duplicate" of real and public utility property.

By Section 2594, General Code (Section 319.41, Revised Code), provision is made for taxes for the current year to be divided into halves and listed in two separate columns with sufficient blank space to the right of each column in which to write the word, "paid," and it is then provided that "the Auditor of State may prescribe such other forms for tax lists and duplicates as seem proper to him in order to produce uniformity throughout the state, and county auditors shall conform thereto." We do not glean from this language any intent to authorize the Auditor of State to increase the number of official tax lists and duplicates. The intent seems to be to give the auditor control of the form only of the two lists which the Legislature had authorized the county auditors to prepare. In any event, we are not advised that the Auditor of State has attempted to authorize additional tax lists.

Appellees' counsel urge that other sections indicate that additional tax lists are contemplated. Sections 5713.01 and 5713.20, Revised Code (Sections 5548 and

5573, General Code), are cited to support this contention. We do not think they do so. It is true that they refer to "the tax list" but as we view it, those references are to the "general tax list" retained by the auditor, which is identical with the "general duplicate" delivered by him to the treasurer.

It should also be said that the language in Section 3892, General Code (Section 727.51, Revised Code), does not seem to justify the placing of unmatured assessments on a tax list of any sort. That section requires the clerk of council to certify the assessment to the auditor, "stating the amounts and the time of payment," and then the auditor is required to place the assessment upon the tax list "in accordance therewith." It seems to us that the import of this is that the auditor is supposed to have recourse to the municipal certificate to find out what installment should be placed on the current tax list and duplicate.

Appellees' counsel also urge against that conclusion that when the municipality certified these assessments to the county auditor for collection only one installment could be placed on the next duplicate for collection, and this indicates that the law contemplates many tax lists, as not only the installments which appear on the duplicate but all unmatured installments are liens. The force of this argument is dissipated when consideration is taken of the fact that as long as one installment appears on the duplicate it is notice that there are or may be other installments which are not yet due. Furthermore, assessments are liens as soon as levied, before certification (Section 3897, General Code [Section 727.55, Revised Code]), requiring an examination of the records of the assessing authority by anyone interested, and this examination would disclose the full extent of the assessment.

So we conclude that these assessments did not ap-

pear on the tax duplicate from 1932 to 1952. When they appeared on the duplicate in 1952, they must be considered as taxes or assessments that had been omitted from the duplicates of the intervening years.

The next question the record presents, and which was argued, is the effect of the lapse of almost 20 years, during which no installment of these assessments appeared on any current duplicate. On the one hand, it is urged that lapse of time—no matter how long—does not have any effect upon the lien, and various sections of the statutes are cited to support that contention. One is Section 3906, General Code (Section 727.61, Revised Code), which provides that unless the assessment is certified to the county auditor within two years from the date it became due, or action is filed to enforce it, it shall cease to be a lien, but if it is certified or action is commenced, then "the lien shall continue in force so long as the assessment remains on the tax list uncollected, or so long as the action is pending, and any judgment obtained, under and by virtue thereof, remains in force and unsatisfied." The other sections relied on relate to sales by the county auditor and county treasurer (Section 5719, General Code [Section 5721.19, Revised Code]; Sections 2667 and 2668, General Code [Section 323.25, Revised Code]), and it is provided that, in actions to enforce the lien, "no statute of limitations shall apply to such actions."

When we analyze these sections (3906, 5719, 2667 and 2668) and related sections we find their operation to be dependent upon the tax or assessment having appeared on the tax list. By express language the lien is created to secure the charges that are found on the "tax list," including any unmatured assessment disclosed by the existence of a matured installment on the duplicate. The tax or assessment must

appear on the current duplicate before it can be placed on the forfeiture list and duplicate and these actions by the auditor and treasurer follow these listings, and their authority to proceed is wholly dependent upon such listings having taken place. These sections continue the lien so long as the tax or assessment is on either the current or general tax list and duplicate or the current forfeiture duplicate without any limitation as to time. The sections so provide. They have nothing to do with taxes and assessments that have not been placed on, or have been removed from the tax list and duplicate.

It should be said that at the time of the filing of this action neither the auditor nor treasurer had taken any action to enforce the collection of the charges which the auditor had placed on the duplicate in 1951. The auditor had discovered that these assessments had been omitted, and being under advice that it was his duty to correct the omission, proceeded to do so. This action challenges his right and duty in that regard. The non-enforceability of the assessments follows as a consequence only.

The appellants, on the other hand, take the position which we have indicated already we believe to be the correct one, that the lawful presence of these assessments upon the 1952 duplicate is dependent solely upon the authority of the auditor to place them there, and that as they had not appeared on any duplicate for more than five years, his authority had expired. This results from the provisions of Section 2593, General Code (Section 319.40, Revised Code). That section reads as follows: "When the county auditor is satisfied that lots or lands on the tax list or duplicate have not been charged with either the county, township, village, city, or school district tax, he shall charge against it all such omitted tax for the preceding years,

not exceeding five years unless in the meantime such lots or lands have changed ownership, in which case only the taxes chargeable since the last change of ownership shall be so charged."

The same limitation upon the authority of the auditor is placed by Section 5573, General Code (Section 5713.20, Revised Code), to place omitted buildings and other structures upon the tax list. And the same five-year limitation on his authority to make refunds is imposed by Section 2590, General Code (Section 319. 37, Revised Code).

It seems to us clear that the authority to place these assessments had long since expired when the county auditor assumed to place them upon the duplicate, both because of the lapse of more than five years and because of the transfer of ownership, and that their enforcement should be enjoined.

We would be content to rest our decision on what we have said thus far, but as the record presents the question of the sale of these premises in the partition case, we believe we should give that matter some consideration.

At the time (1932) the partition action was filed, Section 5692, General Code (Section 5719.25, Revised Code), provided for the payment of taxes, penalties and interest thereon out of the proceeds of any sale in partition, but made no provision for the payment of assessments. This section was amended effective September 2, 1935, by interpolating after "penalties" the words, "assessments then due." However, as this amendment relates to the remedy, it had no effect upon the partition action that was pending at the time. Section 26, General Code (Section 1.20, Revised Code).

The same situation prevailed at the time the case of *Hilling* v. *City of Cincinnati,* 54 Ohio App., 293, 7 N. E. (2d), 1, was filed. The amendment was enacted

during the pendency of that action to foreclose a mortgage, in which action the property was sold. The effect of the amendment was not discussed. Whether that resulted from oversight, or from an agreement that it could have no effect upon the action, does not appear.

We still believe the reasoning in *Hilling* v. *City of Cincinnati, supra,* is sound and applicable with equal force to the facts of the case at bar. We quote the syllabus of that case as it sets forth the substance of our holding:

"1. A mortgagee in a foreclosure action who acquires title by virtue of a sheriff's deed succeeds to all the rights and holds the property free and clear of all claims of all parties to the action. Thus, a municipality having been made a party to the action and having failed to answer will be enjoined from asserting a lien for a street assessment on the property.

"2. A municipality, by certifying a street assessment to the county auditor and county treasurer for collection, constitutes them its agents or representatives so that a judgment rendered against them will bind the municipality although it was not a party by name."

In holding that a sale in an action to which the municipality was a party conveyed a title free of assessments imposed by it, we followed the Supreme Court decision of *City of Cincinnati* v. *Sterritt, Assignee,* 57 Ohio St., 654, 50 N. E., 1128, in which the court affirmed the judgment "upon the grounds stated by the majority in the Circuit Court in this case, 13 O. C. C. Rep., 334." The substance of the majority opinion there approved by the Supreme Court is stated in the syllabus, to wit:

"A city, after having been made a party in a foreclosure proceeding, and required to file its answer and

cross-petition, and having done so, but fails to set up any alley assessment, is barred in a direct action to enjoin the collection of the alley assessment.''

At the time this court decided the *Hilling case,* we thought we were applying the fundamental rule that a sheriff's deed conveyed the title it purported to convey of all the parties to the action just as though they had all joined in a quit claim deed to the purchaser.

The only point in the *Hilling case* not adjudicated in the *City of Cincinnati* v. *Sterritt case* was whether the fact that the city had certified the assessments to the county auditor for collection and he and the county treasurer were the parties to the action was a difference requiring a different decision. We concluded that the county auditor and county treasurer represented the City of Cincinnati in the litigation, and that they were all bound by the action taken therein.

It was our conclusion in that case that the county auditor and county treasurer represent the municipality after certification of the assessment for collection that is disputed in this action. It is said that later cases at least cast a doubt as to the correctness of that conclusion. While we adhere to our conclusion on this subject, the cases cited justify a reconsideration.

Section 3905, General Code (Section 727.60, Revised Code), provides that after an assessment is certified to the county auditor it ''shall * * * be collected with and in the same manner as state and county taxes.'' The Supreme Court construed this provision in *Central Ohio Rd. Co.* v. *City of Bellaire,* 67 Ohio St., 297, 65 N. E., 1007, and held that it conferred upon the county treasurer the exclusive right of action for the collection of such assessment.

The conclusion that the legislative intent was to

make the county treasurer the representative of the municipality in actions to collect assessments is made doubly clear, it seems to us, by the provisions found in Section 3892, General Code (Section 727.51, Revised Code), that, "the city solicitor or the regular and authorized legal representative of any such municipality is hereby authorized and directed to act as attorney for the county treasurer in actions" brought to enforce payment of assessments.

Appellees' counsel assert that all the cases subsequent to the "*Hilling case* hold the lien of taxes and assessments is not set aside by a judicial sale when the decree in the judicial sale does not result in actual payment of the taxes or assessments." We would amend that statement. None of the later cases so hold. Only, however, a casual reading seems to so hold, but when read more carefully the cases are found not to do so. All the cases relied on to sustain their conclusion hold just the contrary. The case that seems to support their position is *Canton Bank & Trust Co.* v. *M. M. Smith-Martindale Co.*, 62 Ohio App., 550, 24 N. E. (2d.), 836. The court, in that case relied on the case of *Grafton* v. *Mong, Aud.*, 134 Ohio St., 416, 17 N. E. (2d), 649 (60 Ohio App., 228, 20 N. E. [2d], 722), quoting with approval from the opinions of the Supreme Court and the Court of Appeals. *Grafton* v. *Mong, Aud.*, was an action against the county auditor and county treasurer to quiet title against a claim for taxes assessed against the plaintiff's property. The trial court sustained a demurrer to the petition and the plaintiff not desiring to plead further, judgment was entered against him. The appeal was from that judgment. The Court of Appeals, in summarizing the allegations of the petition, said that: "A suit to foreclose a mortgage upon the real estate in question was instituted, and at that time there was also a lien for

taxes, *but no public official having authority in reference to the enforcement and collection of the taxes was made a party to the suit.*'' (Italics supplied.) The plaintiff bought the property at the sale. The taxes were not paid out of the proceeds, although the order of distribution directed that they should be paid.

The Court of Appeals, in discussing the applicable law, said, at pages 229 and 230:

''It is well settled that a sale under a judicial order confers upon the purchaser a title freed of all of the claims of the parties to the action, but that such sale carries only the interest, estate and rights in the premises that the parties to the proceedings had and could have asserted: no more, no less.''

And, at page 233, the court quoted with approval from *First National Investment Corp.* v. *Frank, Treas.*, 24 Ohio Law Abs., 474, as follows:

'' 'The appellees not having been parties to the foreclosure proceedings, were in no wise bound by any order which the court made in reference to the payment of taxes. If they had been parties, they would have been bound to look to the sheriff or his bondsmen for said taxes; but not having been parties, their rights are in no wise affected by said foreclosure.' ''

The Court of Appeals, finding its judgment in conflict with a judgment of another Court of Appeals, certified the case to the Supreme Court. In affirming the judgment, the Supreme Court, in 134 Ohio St., 416, stated in the syllabus, that:

''An order to a sheriff to pay taxes, which were then a lien on real estate, out of the proceeds of a judicial sale of such real estate, under Section 5692, General Code, does not operate to transfer the tax lien from the real estate to the proceeds of sale, and when the sheriff fails to pay the taxes as directed, an action in

injunction will not lie against the county auditor and treasurer to prevent them from carrying such taxes on the duplicate and from collecting them, where it does not appear they were parties to the proceedings resulting in the sale of the real estate, or did anything else which might be urged against them by way of estoppel."

It is thus seen that *Grafton* v. *Mong, Aud.*, lends no support to the thesis that a purchaser at a judicial sale takes his title subject to all unpaid taxes and assessments in an action to which the county auditor and county treasurer are parties, duly served with summons and notified of the steps in the proceedings leading up to the sale. That fact has caused us to analyze the facts to determine the case presented for decision. We find that the action started as one in foreclosure and that the county treasurer was an original party to that action and that in his waiver of "the issuance of summons it was recited that the properties might be sold." The county treasurer apparently had no further connection with the case. At some stage of the proceeding, a receiver was appointed and he made a sale for less than the amount of the taxes. It does not appear that the county treasurer had any prior notice of the receiver's intention to make this sale. It does appear that when it was proposed that the decree should operate as full satisfaction of the taxes, the treasurer objected. As it appears, the county treasurer was the only interested person. His statement in his waiver of summons that the property might be sold was no consent to a proposed sale for less than the amount of the taxes conditioned upon his acceptance of the amount in full satisfaction.

The fact that the treasurer was a party to the foreclosure action did not subject him without further

notice to all actions by a receiver appointed by the court in the .action. In *American Savings Bank Co.* v. *Union Trust Co.*, 124 Ohio St., 126, 177 N. E., 199, 79 A. L. R., 160, the court considered what expenditures a receiver in a foreclosure action could make without notice and an opportunity to be heard and refused to allow the receiver credit for certain expenditures because they had been made without prior application for authority and notice given to interested parties so that they could be heard. In the language of the court, at page 132, on such application, "it then becomes the duty of the court to give to the parties in interest notice of such application, thus giving them an opportunity to be heard." That case is authority for the proposition that the county treasurer was entitled to prior notice before he could be bound by any sale authorized at the hearing, and certainly it would have been an abuse of discretion for the court to authorize a sale for less than the taxes and compel the treasurer to accept a sum less than satisfaction as full satisfaction.

Perhaps the case most strongly relied on by appellees is that of *Shaw* v. *Myers, Treas.*, 148 Ohio St., 608, 76 N. E. (2d), 603. That case originated in the Court of Common Pleas of Montgomery County and involved an assessment levied by the Miami Conservancy District, the collection of which the plaintiff sought to have enjoined and the cloud upon his title removed. The plaintiff had purchased the property against which the assessment had been levied at a sale in foreclosure of a mortgage. The treasurer of Montgomery County had been a party to the foreclosure action, had been served personally with summons and directed to set up any claims he had for taxes and assessments. He failed to answer and a default judgment was entered against him. The con-

servancy district was not a party to the foreclosure action. Later, the county treasurer threatened to enforce these conservancy district assessments, and it was this threat that precipitated the action in which the plaintiff contended that the assessments were barred by the decree in the foreclosure action. The Common Pleas Court sustained a demurrer to his petition and the Court of Appeals affirmed the judgment. In its original opinion (48 Ohio Law Abs., 155) the Court of Appeals had distinguished all the cases, including *Hilling* v. *City of Cincinnati,* from the case before it, and when the case came before the court later on an application to certify its judgment as in conflict with *Hilling* v. *City of Cincinnati,* the court adhered to its original opinion, but concluded to certify the case to the Supreme Court because the cases were "very much alike in particulars." 53 Ohio Law Abs., 511.

The Supreme Court had overruled a motion to require the Court of Appeals to certify its record in *Hilling* v. *City of Cincinnati,* and in its opinion in *Shaw* v. *Myers, Treas.,* did not either expressly or by implication make any criticism of that case. On the contrary, the Supreme Court treated *Shaw* v. *Myers, Treas.,* as governed by the special statutes relating to conservancy districts and not by the general law relating to the collection of taxes and assessments. This is directly stated in the court's opinion at page 610, which we quote: "Conservancy districts are political subdivisions of the state; their functions are essentially those of the state, an exercise of part of the sovereign power for the welfare of the people. *These districts are created and governed solely under the Conservancy Act of Ohio.*" (Italics supplied.) The manifold and specific provisions of the Conservancy Act furnish ample basis for that statement.

Section 6828-8, General Code (Section 6101.10, Revised Code), provides for a board of directors, with very broad powers, including power to appoint officers including engineers, an attorney, and a secretary who should not be a member of the board and "shall serve also *as treasurer of the district*," and, by Section 6828-42 *et seq.*, General Code (Section 6101.44 *et seq.*, Revised Code), he is charged with the duty of preparing and keeping and certifying the assessment books and a "Delinquent Assessment Book of ............ District, .......... County." The board of directors is given power to borrow money and to levy and collect taxes and assessments. The method of enforcing payment is prescribed by Section 6828-54, General Code (Section 6101.60, Revised Code), in these words: "The suit shall be brought in the corporate name of the district by its attorney against the land or lands, property or properties, or public corporation, on which such tax or assessment has not been paid."

We fail to find any provision in the Conservancy Act authorizing a *county* treasurer to enforce payment of a conservancy assessment by suit. He is not made the representative of the conservancy district for that purpose. His authority is limited to receiving and accounting for payments voluntarily made. This is in marked contrast to the exclusive authority of a county treasurer over the enforcing of payment of municipal assessments. Accordingly, the Supreme Court held, as stated in the second paragraph of the syllabus in *Shaw* v. *Myers, Treas., supra*, that:

"A county treasurer is only an instrumentality for the collection of conservancy assessments and is not such an agent of the conservancy district that his failure to set up the assessment liens of the conservancy district in a mortgage foreclosure action will estop the district from subsequently asserting such liens."

And, at page 613, the court said:

"The treasurer, although he has a statutory duty to collect these assessments, is not such an agent of the conservancy district that his default would bind the conservancy district or destroy its lien."

The court quoted from *Grafton* v. *Mong, Aud., supra,* in which it had expressly recognized that municipal assessments could be barred by a judicial sale to which the county treasurer was a party. And its prior decision was not qualified or criticized in any way.

Finally, counsel cite the case of *State, ex rel., Donsante, a Taxpayer,* v. *Pethtel, Aud.,* 158 Ohio St., 35, 106 N. E. (2d), 626, as authority for the indestructibility of taxes except by payment. We think the case has been misconstrued. It was an action in mandamus, filed on December 1, 1948, by a taxpayer, to require the county auditor and county treasurer to restore certain assessments to the tax list, which they had removed in conformity to an ordinance of the village of Wickliffe, directing such removal. An examination of the printed record discloses that there were 12 of these ordinances, each relating to specific property. The first was passed in 1945 and the last in 1948. Certain lot owners, against whose property the restored assessments would be charged, were allowed to intervene, some of whom alleged that they had purchased their lots relying in the action of the village council in abating the assessments, had reallotted such parcels, had resold some, upon which homes had been built and mortgages executed to pay cost of construction; and others alleged other changes in conditions making it inequitable to restore the assessments.

It will be observed that it appears that five years had not elapsed from the time the assessments were removed from the tax list at the time the action was filed. Therefore, the court did not comment on the

effect of the lapse of five years upon the power of the auditor to restore the omitted assessments to the tax list. The record presented no such question. And the court took unusual precautions to make it clear that its decision had nothing to do with the right of an individual property owner to resist an assessment against his property. This is made clear in the first paragraph of the opinion on page 41, and the court ends its opinion with this statement: "However, the judgment in this case shall not affect the right of any taxpayer or interested party to resist the collection of the tax levied against his individual property and to establish his equitable defenses against such collection, if any, superior to the equities of the payer of general taxes who may be affected by the abatement of any such assessments."

For these reasons, the judgment is reversed and final judgment directed for the plaintiffs.

*Judgment reversed.*

MATTHEWS, P. J., Ross and HILDEBRANT, JJ., concur in opinion and judgment.