OPINION
{¶ 1} Appellants, Omnitronics, LLC ("Omnitronics") and Broad 
Jackson, Ltd. ("Broad Jackson"), appeal from a judgment of the Ashtabula County Court of Common Pleas awarding the City of Conneaut $283,517.98 for the costs of demolishing *Page 2 
a building located on a property owned by Broad Jackson. For the following reasons, we affirm.
 {¶ 2} Substance Facts and Procedural History
 {¶ 3} The subject property is located along Jackson Street, between Harbor Street and Broad Street, in Conneaut, Ohio. There were three structures on the property. A 1907 three-story brick building, known as the Astatic Building, stood on the corner of Broad Street and Jackson Street. It had a street address of 227 Jackson Street. On the corner of Jackson Street and Harbor Street, there were two modern buildings: a one-story building and a two-story building, which housed certain light industrial operations.
 {¶ 4} The record in this case reflects a lengthy series of events, which we describe in chronological order.
 {¶ 5} In 2002, CTI Audio, Inc., f.k.a. Conneaut Technologies Inc. ("CTI"), owned the subject property. Omnitronics leased one of the modern buildings from CTI. William J. Ross was the president of CTI and Lawrence J. Ousky was the president of Omnitronics.
 {¶ 6} On February 1, 2002, Sky Bank filed a complaint in the Ashtabula County Court of Common Pleas, seeking to foreclose on the subject property, because CTI defaulted on a loan secured by a mortgage on the property. In the complaint, Sky Bank named CTI and several other lien holders as defendants. The City of Conneaut ("the city") was also named as a defendant because of a loan it made to CTI in 1987 — CTI defaulted on the loan and the city subsequently obtained a judgment against CTI. *Page 3 
 {¶ 7} On July 23, 2002, the Ashtabula County Court of Common Pleas entered a Judgment Decree in Foreclosure in favor of Sky Bank.[1]
 {¶ 8} The Citation
 {¶ 9} Subsequent to the entry of the Judgment Decree in Foreclosure, the Fire Chief of the City of Conneaut, Mr. Bim Orrenmaa, issued a "Fire Department Citation" ("the citation") against the subject property on August 20, 2002. The citation stated the structure at issue was "[t]he former Astatic building — 3 story built in 1907," "believed to be [located at] 227 Jackson Street." The citation described the building as "decayed, dilapidated, and structurally unsafe," with its bricks falling and its roof and other parts decayed. The citation stated that the building violated the city's Fire Marshall Order No. 105.2 and Property Maintenance Code 108.1.1. The "Responsible Person" named in the citation was "William Ross — Conneaut Technologies Inc."
 {¶ 10} Mr. Orrenmaa ordered the violations be abated, pursuant to his authority under R.C. 3737.42 and section 1301:7-1-05 of the Ohio Fire Code. In addition, Mr. Orrenmaa proposed a civil penalty of $1,000 per day, pursuant to R.C. 3737.43 and R.C. 3737.51.
 {¶ 11} The citation described the following corrective action: "owner(s) and other responsible persons shall obtain permits and begin demolition within 10 days" and have the demolition completed within ninety days.
 {¶ 12} The citation contained a provision for an appeal hearing before the Ohio Board of Building Appeals, upon request within thirty days from the receipt of the *Page 4 
citation.
 {¶ 13} Notably, the citation contains the following language:
 {¶ 14} "TAKE NOTICE that ORC section 3737.42(C) requires the RESPONSIBLE PERSON to POST THIS CITATION or a copy or copies thereof at or near each place of violation."
 {¶ 15} A copy of the citation was mailed to several representatives of Sky Bank, Michael Manastra of Omnitronics, and to "William Ross, Omnitronics, 341 Harbor Street, [2]" although Mr. Ross was the president of CTI, not Omnitronics.
 {¶ 16} The Complaint
 {¶ 17} On September 16, 2002, Mr. Orrenmaa, in his capacity as Fire Chief of the City of Conneaut, filed a Complaint and Demand for Injunctive Relief in the trial court, naming CTI and Omnitronics as defendants. The complaint alleged that it was filed pursuant to R.C. 3781.01 et seq.[3]
 {¶ 18} The complaint alleged that the defendants were maintaining a public nuisance at the commercial premises located at the corner of Harbor Street and Jackson Street known as 341 Harbor Street.[4] It described a brick three-story structure located in the premises as "unsafe, unsanitary, a fire hazard, and/or dangerous to *Page 5 
human life, surrounding property and the public welfare."
 {¶ 19} The complaint stated that the fire department had issued an adjudicatory order for the defendants to demolish the building within ten days. It alleged that the defendants failed to comply with the order, thus entitling the fire department to injunctive relief pursuant to Chapter 3781 of the Revised Code. Specifically, the complaint requested a judgment for a preliminary and permanent injunction for the demolition of the dilapidated structure.
 {¶ 20} The Consent Judgment Entry
 {¶ 21} Soon after the complaint was filed, Lori B. Lamer, the City's Law Director, Mr. Ross, President of CTI, and Mr. Ousky, President of Omnitronics, entered into an agreement stipulating the subject structure to be a public nuisance.
 {¶ 22} The parties' agreement resulted in a "Judgment Entry Granting Injunction" entered by the court on September 26, 2003. The consent judgment entry was signed by Ms. Lamer on behalf of the city, Mr. Ross on behalf of CTI, the titled owner of the real property, and Mr. Ousky on behalf of Omnitronics, the tenant in possession.
 {¶ 23} That judgment entry stated, in pertinent part:
 {¶ 24} "The Court finds that the Plaintiff issued an adjudicatory order on or about the 20th day of August, 2002 alleging that the subject property, described below, was decayed, dilapidated and was structurally unsafe and ordering the Defendants to commence demolition within ten (10) days of the date of the Order.
 {¶ 25} "The Court further finds that the Plaintiff thereafter commenced this action on September 16, 2002, by filing a Complaint alleging that the Defendants are maintaining a public nuisance at the commercial premises located at the corner of *Page 6 
Harbor Street and Jackson Street and known as 341 Harbor Street in the City of Conneaut, Ohio in that the structures * * * are in the opinion of the Plaintiff, unsafe, unsanitary, a fire hazard, and/or dangerous to human life, surrounding property and the public welfare, in violation of Ohio Revised Code Section 3781.01
 {¶ 26} "* * *.
 {¶ 27} "The Court further finds that Defendants have been served with a copy of the Complaint and Summons according to law and said service is hereby approved.
 {¶ 28} "The Court further finds that it has jurisdiction to hear this matter pursuant to Ohio Revised Code Section 3781.01 et seq.
 {¶ 29} "* * *.
 {¶ 30} "IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED, in accordance with the agreement of the parties, as follows:
 {¶ 31} "1. The commercial premises located at the corner of the Harbor Street and Jackson and known as 341 Harbor Street in the City of Conneaut, Ohio are a public nuisance in that the structures * * * are unsafe, unsanitary, a fire hazard, and/or dangerous to human life, surrounding property and the public welfare, in violation of Ohio Revised Code Section 3781.01, et seq.
 {¶ 32} "2. The Plaintiff is hereby granted a preliminary and permanent injunction against the Defendant, CTI Audio, Inc., for the demolition and removal of afore-described structures and the Defendant is hereby ordered to obtain any and all necessary permits and to commence the demolition of the afore-described structures within ten (10) days from the date of this Order. *Page 7 
 {¶ 33} "3. In the event that the Defendant fails and refuses to commence said demolition within ten (10) days from the date of this Order, or is unable to do so for any reason, then Plaintiff shall be granted access to and permission to enter upon the subject property. Plaintiff shall obtain the necessary permits and shall commence and complete such demolition. The costs of demolition, including but not limited to permit and administrative costs, shall be certified to the Ashtabula County Auditor and said costs shall be placed upon the tax duplicate and returned to the City of Conneaut. This Judgment Entry does not prohibit the City of Conneaut from commencing a separate civil action to collect those costs."
 {¶ 34} "* * *.
 {¶ 35} "5. This Court shall retain jurisdiction over this matter and any party may file a motion to enforce the provisions of this Judgment Entry."
 {¶ 36} Although the judgment entry imposed a ten-day period for CTI to comply with the order, it did not set forth any specific time period for the city to commence the demolition project, should CTI fail to do so.
 {¶ 37} Transfer of Title to Sky Bank and Broad Jackson's SubsequentPurchase of the Property
 {¶ 38} Neither CTI nor the city commenced the demolition project. On October 15, 2002, Sky Bank purchased the subject property at a sheriffs sale. On February 26, 2003, a sheriffs deed was issued to Sky Bank.
 {¶ 39} On May 22, 2003, Mr. Ousky, President of Omnitronics, formed a separate corporation, Broad Jackson, Ltd., for the sole purpose of purchasing the subject property. On that same day, Broad Jackson entered into an agreement to purchase *Page 8 
the property for $265,275 from Sky Bank. Sky Bank executed a quit-claim deed in favor of Broad Jackson.
 {¶ 40} On June 19, 2003, the city filed an Affidavit of Facts Relating to Title by Mr. Orrenmaa, recorded in the Ashtabula County Recorder's office in its Records of Deeds, Volume 254, pp. 197-202. The affidavit noted the August 20, 2002 citation issued by Mr. Orrenmaa, the September 26, 2002 consent judgment entry, the foreclosure action and the subsequent transfer of title to Sky Bank.
 {¶ 41} On July 2, 2003, the title of the subject property was transferred from Sky Bank to Broad Jackson, including the Astatic Building. A deed transferring the title was recorded on that day.
 {¶ 42} Ordinance for the Demolition
 {¶ 43} On August 26, 2003, the city inspected the Astatic Building again and determined that its code violations had not been remedied and that the property represented "a substantial hazard to the general public."
 {¶ 44} On October 20, 2003, the city passed Ordinance No. 83-80, authorizing the City Manager to take any action necessary to facilitate the demolition of the Astatic Building. The ordinance cited the September 26, 2002 judgment and the inspection by the city's fire department which revealed that the building was continuing to deteriorate and presenting a substantial risk of harm to nearby persons and property.
 {¶ 45} Mr. Orrenmaa's Motion for Relief from Judgment and to AddParties
 {¶ 46} On December 18, 2003, Mr. Orrenmaa filed simultaneously a Motion for Relief from Judgment pursuant to Civ. R. 60 and a Motion to Join Additional Parties. The Motion for Relief from Judgment stated that because of the foreclosure and the *Page 9 
subsequent sale of the subject property by Sky Bank to Broad Jackson, it was no longer equitable to enforce that judgment against either CTI or the city.
 {¶ 47} Mr. Orrenmaa's Motion to Join Additional Parties requested the trial court join Sky Bank and Broad Jackson as parties to the instant action so that the court could determine the respective liabilities of these parties relative to the court's September 26, 2002 order.
 {¶ 48} Thereafter, on January 26, 2004, CTI filed a "Response to Plaintiffs Motion for Relief from Judgment," objecting to Mr. Orrenmaa's motion to vacate the September 26, 2002 order, arguing that the city was required by that order to commence and complete the demolition once CTI failed to do so within the ten-day period and that the subsequent foreclosure and resale of the building had no effect on the city's responsibility.
 {¶ 49} On March 26, 2004, Sky Bank filed a memorandum opposing Mr. Orrenmaa's Motion to Join Additional Parties. On that day, Broad 
Jackson also filed a brief opposing the Mr. Orrenmaa's Motion for Relief from Judgment, arguing that the city's failure to demolish the property and placing the costs on the tax duplicate in accordance with the September 26, 2002 judgment did not warrant relief from that judgment.
 {¶ 50} The Amended Complaint
 {¶ 51} Also on March 26, 2004, Mr. Orrenmaa obtained leave from the court to file an amended complaint. *Page 10 
 {¶ 52} The amended complaint named CTI, Omnitronics, Sky Bank, and Broad Jackson as defendants. The complaint stated the action was brought pursuant to R.C. 3781.01 et seq.
 {¶ 53} Count one of the amended complaint related to the defendants' failure to comply with the August 20, 2002 citation. It alleged that the defendants maintained a public nuisance at 341 Harbor Street in violation of R.C. 3781.01 et seq.; that the plaintiff issued an adjudicatory order on August 20, 2002; and that the defendants failed to comply with the order, therefore entitling the fire department to injunctive relief pursuant to Ohio Revised Code Section 3781.
 {¶ 54} Count two of the amended complaint alleged that the trial court had issued a preliminary and permanent injunction for the demolition of the subject building, as agreed upon by CTI and Omnitronics. It also alleged that (1) Sky Bank was on notice of both the citation and the injunction issued by the trial court; (2) the city filed an Affidavit of Facts Relating to Title and recorded it in the Ashtabula County Recorder's office; (3) Sky Bank sold the property in violation of the "BOCA" Property Maintenance Code, the court's previous order, and the citation issued by the Fire Department; and (4) the sale of the subject property was consummated without the city's knowledge.
 {¶ 55} Mr. Orrenmaa asserted the city was entitled to assess civil penalties against Broad Jackson and Omnitronics pursuant to R.C. 3737.51 due to the violations of the "BOCA" Property Maintenance Code, the Codified Ordinances of the City of Conneaut, and the Ohio Revised Code.
 {¶ 56} Count three of the amended complaint stated: "[p]ursuant to the authority vested in the City of Conneaut, Ohio by the Ohio Revised Code and pursuant to this *Page 11 
Court's previous Judgment Entry, the Plaintiff may be required to abate the public nuisance located upon the subject property at a cost yet to determined * * *."
 {¶ 57} Based on these allegations, Mr. Orrenmaa requested an order (1) granting a preliminary and permanent injunction for the immediate removal and demolition of the subject structures; (2) imposing a civil penalty of up to $1,000 per day as permitted by R.C. 3737.51; and (3) determining and apportioning the costs of demolition among the defendants.
 {¶ 58} The Court Added Sky Bank and Broad Jackson as Parties
 {¶ 59} On April 14, 2004, the court issued a judgment entry regarding Mr. Orrenmaa's motions for relief from judgment and to add additional parties. The judgment stated, in pertinent part:
 {¶ 60} "* * * On September 26, 2002, an injunction was granted to the Plaintiff. At that time, the Defendants were CIT Audio, Inc. and Omnitronics, LLC. The fifth paragraph provided that the Court shall retain jurisdiction over this matter and any party may file a Motion to Enforce the Provision of the Judgment Entry. * * *.
 {¶ 61} "On December 18, 2002, Plaintiff filed a Motion for Relief from Judgment and to Add Additional Parties. The Motion for Relief from Judgment cited the transactions that have taken place * * *. The property was foreclosed upon by Sky Bank and a portion of the property was sold to Broad Jackson, Ltd.
 {¶ 62} "This Court specifically retained jurisdiction concerning the premises at 341 Harbor Street. That means that the Court may enforce its orders and deal with new parties concerning the property. The gist of the Plaintiffs Complaint, filed on September 16, 2002, deals with the premises that were deemed to be a public nuisance, unsafe, *Page 12 
unsanitary, and a fire hazard and dangerous to human life, surrounding the property and public welfare. As the Court has retained jurisdiction to deal with those issues, the objection by CTI Audio, Inc., Broad 
Jackson, Ltd., and Sky Bank, are hereby OVERULED."
 {¶ 63} We note that although the court stated it overruled the "objection by CTI Audio, Inc., Broad Jackson, Ltd., and Sky Bank," it did not state expressly whether it granted or denied Mr. Orrenmaa's motion for relief from the September 26, 2002 judgment entry. Broad Jackson asserts on appeal that in its April 14, 2004 judgment, the court granted the city's motion for relief from judgment and therefore the September 26, 2002 judgment was vacated. Broad Jackson is mistaken, because a motion not ruled upon is implicitly deemed denied.Solon v. Solon Baptist Temple (1982), 8 Ohio App.3d 347.
 {¶ 64} Settlement Proposal by Broad Jackson to the City
 {¶ 65} In a correspondence dated April 14, 2004, counsel representing Mr. Ousky, Broad Jackson, and Omnitronics, proposed to the city's Law Director, Ms. Lamer, a settlement of the matter. The correspondence referenced a two-year interest-free loan for an amount of $150,000 Sky Bank had apparently offered the city for the demolition project. Broad Jackson proposed that the loan be extended for a five-year period and agreed to be primarily responsible for the payment of the loan. Broad Jackson also referenced a $68,000 grant received by the city for the demolition project, proposing that the city first utilize funds from the grant for the demolition cost and thereafter the funds from the bank would be drawn as needed to complete the *Page 13 
demolition project. The correspondence stated Broad Jackson was willing to incur any additional costs above the $150,000 loan and the $68,000 grant.
 {¶ 66} The city, however, through Ms. Lamer, responded in a letter that it did not wish to enter into an agreement with Mr. Ousky, Broad Jackson, or Omnitronics regarding the demolition costs, citing their failure to commence the demolition in accordance with the prior court order.
 {¶ 67} Subsequently, the city and Sky Bank reached a settlement on this matter and, on July 2, 2004, Mr. Orrenmaa moved to dismiss the bank from the action, which the court granted.
 {¶ 68} Motions for Summary Judgment on the Amended Complaint
 {¶ 69} Both parties moved for summary judgment on Mr. Orrenmaa's amended complaint: Broad Jackson and Omintronics filed a motion for summary judgment on February 10, 2006, and Mr. Orrenmaa on April 3, 2006.
 {¶ 70} Broad Jackson and Omnitronics contended that the city was to provide a thirty-day notice prior to commencing the demolition pursuant to R.C. 715.261. Mr. Orrenmaa argued R.C. 715.261 related to municipal building inspections and administrative order and therefore was not applicable in the instant matter, because the instant matter was commenced pursuant to Ohio Revised Code Chapter 3781 and R.C. 3781.01
permits a municipal corporation "to make further rules and regulations so long as it does not conflict with any portion of any building code adopted by the municipality."
 {¶ 71} Demolition of the Astatic Building
 {¶ 72} On September 30, 2004, the city commenced the demolition of the Astatic Building and completed the project by the end of 2004. To finance the demolition *Page 14 
project, the city obtained a loan of $170,000 from Sky Bank. The city also received a community development block grant of $85,000 for the project.
 {¶ 73} On February 14, 2005, the Clerk of Conneaut City Council certified to the Ashtabula County Auditor the demolition costs of $263,104.14. The auditor placed a lien upon the property for tax year 2005, to be collected in 2006. On April 13, 2005, the city filed a Motion to Supplement Pleadings, which supplemented the amended complaint with the information regarding the amount of the demolition costs.
 {¶ 74} The record also reflects that on February 15, 2005, Mr. Ousky, on behalf of Broad Jackson, appeared at a Board of Tax Appeals ("BTA") hearing challenging the fair market value of the subject property determined by the Ashtabula County Board of Revision.
 {¶ 75} At the hearing, Broad Jackson argued that the BTA should adopt the sale price of $275,000 as the fair market value of the property for tax year 2003. Broad Jackson offered the testimony of Diane Ksiazek, an officer from Sky Bank who had personal knowledge of the marketing of the subject property prior to the sheriff sale. She testified that the bank received a single offer of $295,000 prior to the sheriffs sale, nowhere near the amount of $800,000 as valued by the Board of Revision for the property. She testified the low offer was due to "the expense that it was gonna take to tear down the building, which was mandatory to happen." She stated that "the main problem" [with the marketing of the property] was the cost of the demolition." She testified that Sky Bank eventually purchased the property at the sheriffs sale for $800,000 pursuant to the minimum bid requirement, and six months later sold it to Mr. Ousky for $275,000. She referenced the injunction order in her testimony. *Page 15 
 {¶ 76} Mr. Ousky also testified at the hearing. In connection with the low purchase price of $275,000, he testified that there were problems with the boiler, roof, sprinkler, and water lines in the building occupied by Omnitronics and later, Broad Jackson. When BTA's Attorney Examiner asked him: "And then on top of all of those problems there is this demolition issue, as well, correct?" he answered: "Yes." At the closing argument, Broad Jackson's counsel stated:
 {¶ 77} "If the demolition problem was gone, would the market value be a little more? I don't know. But certainly any buyer who bought the property was going to have to deal with the demolition problem. It wasn't going away. It was a part of the property. It drove its value.
 {¶ 78} "In fact * * * I think there is even a lawsuit right now regarding the demolition problem. So certainly it was going to plague any buyer and play a role in the value of the property."
 {¶ 79} Summary Judgment in Favor of Mr. Orrenmaa on the AmendedComplaint
 {¶ 80} On July 17, 2006, the trial court granted summary judgment on the amended complaint in favor of Mr. Orrenmaa and denied Broad 
Jackson and Omnitronics' motion for summary judgment.
 {¶ 81} In its judgment entry, the court cited the terms agreed to by the parties in the consent entry journalized on September 26, 2002 — if the defendants failed to commence the demolition within ten days, the plaintiff would be granted access to the premises and would commence the demolition, the cost of which would be certified to the county auditor and placed on the tax duplicate; furthermore, the plaintiff reserved *Page 16 
the right to commence a separate civil action to collect the costs associated with the demolition project.
 {¶ 82} The court rejected Broad Jackson and Omnitronics' contention that they were never issued a citation or provided with a notice of the demolition, stating: "For whatever reason Ousky agreed to the consent entry, * * * and to assert now that he, president of Broad and Jackson, Ltd., and owner of Omnitronics, LLC, was unaware that the City sought to demolish the building and [that he would] incur liabilities therefrom, is specious at best."
 {¶ 83} Subsequently, on August 17, 2007, the court held a hearing for the issue of damages. Shawn Aiken, the City Engineer, who was the project manager for the demolition and oversaw the bidding process, testified that the demolition of the property was done in a workmanlike and professional manner. John Williams, the City Finance Director, testified concerning the costs incurred by the city in the demolition of the Astatic Building. He also testified that the community block grant the city received in 2003 for the demolition of the subject building could have been used for other community projects. Phyllis Dunlap, who administered community block grants for the city, testified that if Broad Jackson had done the demolition, the city could have amended the grant application and applied the funds to other community projects, such as repairing the city's infrastructure.
 {¶ 84} Broad Jackson presented the testimony of Lakshmia Gupta, who testified that the contract specifications were not met by the city and that the work was not done in a professional manner. Broad Jackson, however, did not present specific *Page 17 
testimony concerning the damages it sustained as a result of any alleged defect in the contract specifications or the manner of execution.
 {¶ 85} On October 29, 2007, the court entered a judgment awarding damages in the amount of $283,517.98 against Broad Jackson and CTI. This amount included (1) $222,804.20 paid to M M Excavating, Inc., which performed the demolition and the asbestos removal of the Astatic Building, (2) $11,303.14, for engineering services for the demolition project, (3) $11,992.15 paid to Squires, Sanders Dempsey, for its review of the bond issued for the demolition project, (4) interest payments to Sky Bank for the loan, (5) $16,270.19 paid to the Illuminating Company for its services in the demolition project; and (6) $1,693.90 incurred by the city for labor and equipment costs relating to the project.
 {¶ 86} Broad Jackson and Omnitronics filed the instant appeal and raise the following assignments of error[5]:
 {¶ 87} "[1.] The trial court erred in overruling Appellants' Motion for Summary Judgment and Granting Appellee's Motion for Summary Judgment.
 {¶ 88} "[2.] The trial court erred in granting damages to Orrenmaa."
 {¶ 89} In the first assignment error, Broad Jackson and Omnitronics assert that the trial court improperly granted summary judgment in favor of Mr. Orrenmaa, claiming that Broad Jackson acquired the subject property from Sky Bank free and clear of all encumbrances; that notice of the Municipal Fire Code violations and the demolition was never provided to Broad Jackson or Omnitronics; and that there was no basis for the *Page 18 
city's recovery of the demolition costs from Broad Jackson or Omnitronics.
 {¶ 90} Standard of Review for Summary Judgment
 {¶ 91} This court reviews de novo a trial court's order granting summary judgment. Hudspath v. Cafaro Co., 11th Dist. No. 2004-A-0073,2005-Ohio-6911, ¶ 8. "A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." Hapgood v. Conrad, 11th Dist. No. 2000-T-0058, 2002-Ohio-3363, ¶ 13, citing Parenti v. Goodyear Tire Rubber Co. (1990), 66 Ohio App.3d 826, 829.
 {¶ 92} "Since summary judgment denies the party his or her `day in court' it is not to be viewed lightly as docket control or as a `little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In Dresher v.Burt [(1996), 75 Ohio St.3d 280], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ. R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ. R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party *Page 19 
has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ. R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in Mitseff v.Wheeler (1988), 38 Ohio St. 3d 112." Welch v. Ziccarelli, 11th Dist. No. 2006-L-229, 2007 Ohio 4374, ¶ 40.
 {¶ 93} Standard of Review for an Injunction
 {¶ 94} The standard of review in an appeal from the granting of an injunction by a trial court is whether the trial court abused its discretion. Franklin Cty. Dist. Bd. of Health v. Paxson,152 Ohio App.3d 193, 2003-Ohio-1331, at ¶ 24. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 95} We further recognize that, as an injunction is a form of equitable relief, a trial court has considerable discretion in attempting to fashion a fair and just remedy. Winchell v. Burch (1996),116 Ohio App.3d 555, 561. "An injunction is an extraordinary equitable remedy which is particularly dependent on the specific facts and circumstances of a given case. For this reason, the grant or denial of an injunction generally rests within the sound discretion of the trial court." Cullen v. Milligan (1992), 79 Ohio App.3d 138, 140-141, citingPerkins v. Quaker City (1956), 165 Ohio St. 120, syllabus.
 {¶ 96} Analysis *Page 20 
 {¶ 97} The crux of this case is Broad Jackson's complaint that it was denied due process because it was never provided notice of the Astatic Building's code violations. The history of this case, however, shows the contrary.
 {¶ 98} We begin our analysis by noting that "[i]n the absence of fraud, a judgment or decree of a court having jurisdiction of the subject matter, rendered by consent of the parties, though without any ascertainment by the court of the truth of the facts averred, is binding and conclusive between the parties * * *. Such a judgment is considered as binding and conclusive as one rendered in an adversary suit, in which the conclusions embodied in the decree had been based upon controverted facts and due consideration thereof by the court." Ohio State MedicalBd. v. Zwick (1978), 59 Ohio App.2d 133, 140.
 {¶ 99} Next, we recognize that "[d]ue process requires that notice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In re Foreclosure of Liens forDelinquent Taxes (1980), 62 Ohio St.2d 333, paragraph one of the syllabus, citing Mullane v. Hanover Bank Trust Co. (1950),339 U.S. 306, 314. See, also, Akron-Canton Regional Airport Authority v.Swinehart (1980), 62 Ohio St.2d 403, 406 (an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections). The court inSwinehart also cautioned that a court must "examine each case upon its particular facts to determine if notice was reasonably calculated to reach the interested parties." Id. at 407. *Page 21 
 {¶ 100} In this case, the record reflects that the city's Fire Chief, Mr. Orrenmaa, issued a citation delineating the Astatic Building's code violations, a copy of which was sent to CTI, Sky Bank, and Omnitronics. The citation also required the "Responsible Person" to post a copy at the place of violation.
 {¶ 101} Mr. Orrenmaa thereafter filed a complaint in the trial court for an injunctive relief, naming CTI and Omnitronics as defendants. Soon afterwards, the city, CTI, and Omnitronics reached an agreement and a consent judgment entry was entered by the court.
 {¶ 102} The consent judgment entry contained the court's finding that the building at issue was a public nuisance and it granted a preliminary and permanent injunction against CTI for the demolition of the structure. It further provided that if CTI failed to commence the demolition within ten days from the date of the order, the plaintiff would be granted access to enter upon the property and to commence the demolition.
 {¶ 103} Although the entry set forth a time period for CTI to commence the demolition, it notably was silent as to the time period for the city's commencement of the demolition should CTI fail to do so.
 {¶ 104} In addition the entry provided that the costs of demolition would be certified to the Ashtabula County Auditor and placed upon the tax duplicate, and become a lien upon the lands. It also provided that the city had the right to commence a separate civil action to collect the costs. The entry further provided that the court retained jurisdiction over the instant matter and that any party may file a motion to enforce its provisions. *Page 22 
 {¶ 105} The consent judgment was signed by Ms. Lamer, the city's Law Director, Mr. Ross, on behalf of CTI, and Mr. Ousky, on behalf of Omnitronics.
 {¶ 106} The record therefore establishes that Mr. Ousky, as President of Omnitronics, which was a tenant on the subject property, received notice of the Astatic Building's code violations: he received a copy of the August 20, 2002 citation issued by Mr. Orrenmaa;[6] he presumably also received notice of the building's code violations by way of a copy of the citation required to be posted at the building; and he was further put on notice of the demolition matter when Omnitronics was named as a defendant in the complaint filed by Mr. Orrenmaa in the trial court. Finally, his participation in a settlement leading to the consent judgment entry affirmatively establishes he had notice of the demolition matter.
 {¶ 107} With the knowledge of the pending demolition, the cost of which was to be placed on the tax duplicate and became a lien on the land, Mr. Ousky formed a separate corporation, Broad Jackson, for thesole purpose of purchasing the subject property from Sky Bank.
 {¶ 108} Broad Jackson claims Mr. Ousky's notice of the citation and the demolition order cannot be imputed to Broad Jackson, arguing Broad Jackson had a corporate existence only after the issuance of the citation and the entry of the September 26, 2002 judgment. The question, as we see it, is then whether the knowledge of an incorporator can be imputed to a corporation.
 {¶ 109} The Doctrine of Imputed Knowledge *Page 23 
 {¶ 110} Ohio has long recognized "[a] corporation cannot see or know anything except by the eyes and intelligence of its officers." Orme v.Baker (1906), 74 Ohio St. 337. A corporation can act only through its officer and agents, and the knowledge of the officers of a corporation is at once the knowledge of the corporation. Arcanum Nat'l Bank v.Hessler (1982), 69 Ohio St.2d 549, 557, citing The First Nat'l Bank ofNew Bremen v. Burns (1913), 88 Ohio St. 434. See, also, EmpireSec. Corp. of Ohio v. Travelers Indem. Co. (Dec. 24, 1974), 10th Dist. No. 74AP-328, 1974 Ohio App. LEXIS 3423, *12-13.
 {¶ 111} Applying the doctrine of imputed knowledge and examining this case upon its particular facts, as we must, we conclude Broad Jackson had notice of the code violations and the pending demolition of the Astatic Building, through notice to its incorporator, Mr. Ousky. Broad Jackson cannot be allowed to disown the knowledge possessed by its incorporator, especially when Broad Jackson's corporate existence was created solely for the purpose of purchasing the subject property. For this court to conclude otherwise would be to promote fraud rather than prevent it.
 {¶ 112} Constructive Notice
 {¶ 113} Our conclusion is the same if, in the alternative, we analyze the instant case under the notion of "constructive notice." "Constructive notice" is that which the law regards as sufficient to give notice and is regarded as a substitute for actual notice or knowledge. In re Fahle's Estate (1950), 90 Ohio App. 195, 198. "Constructive notice" has further been defined as knowledge of "circumstances which ought to have excited apprehension and inquiry in the mind of a prudent and reasonable man." Varwig v. Railroad Co.
(1896), 54 Ohio St. 455, 468. *Page 24 
 {¶ 114} Furthermore, "notice to an agent, while acting for his principal, of facts affecting the character of the transaction, is constructive notice to the principal." American Export Inland CoalCorp. v. Matthew Addy Co. (1925), 112 Ohio St. 186, 198. See, also,Pitzer v. Littleton, 4th Dist. No. 06CA14, 2007-Ohio-1584, ¶ 14, citingAmerican Export.
 {¶ 115} Broad Jackson, through its incorporator and agent, Mr. Ousky, knew that the Astatic Building had been declared a public nuisance and that the city would certify the demolition to the auditor and place the costs on the tax duplicate, that is, it had knowledge of circumstances "which ought to have excited apprehension and inquiry in the mind of a prudent and reasonable man." Varwig at 468. Under this line of case law, we conclude Broad Jackson had "constructive notice" of its agent's knowledge regarding the building's pending demolition.
 {¶ 116} Broad Jackson Had Notice through the Recorded Affidavit
 {¶ 117} Moreover, the record shows that Broad Jackson, after cominginto its corporate existence and before it acquired the title of the subject property on July 2, 2003, was, in fact, put on notice of the demolition matter, by way of Mr. Orrenmaa's Affidavit of Facts Relating to Title recorded on June 19, 2003, in the Ashtabula County Recorder's office, which noted the August 20, 2002 citation and the September 26, 2002 judgment entry journalized by the court.
 {¶ 118} Testimony at the BTA Hearing Further Evidenced Broad Jacksonhad Notice of the Demolition Matter.
 {¶ 119} Broad Jackson's knowledge of the demolition matter is further evidenced by the testimony it offered at the BTA hearing. At the hearing, Sky Bank's representative, who was personally involved in the marketing of the subject property, *Page 25 
stated that the bank received only one low offer for the property, explaining the main problem with the marketing of the property involved the costs of the demolition. More significantly, when asked if the demolition issue added to the other problems the property was experiencing and contributed to its low value, Mr. Ousky answered affirmatively. In addition, Broad Jackson's counsel stated that the lawsuit regarding the demolition problem "was going to plague any buyer and play a role in the value of the property."
 {¶ 120} Viewing the evidence in this case in its totality, therefore, we conclude that the notice provided to Broad Jackson in this case, whether we characterize it as actual or constructive, satisfies the due process requirement, as Broad Jackson was sufficiently apprised of the pendency of the demolition matter. The sufficiency of that notice is amply evidenced by Broad Jackson's proposal of settlement to the city: in an April 14, 2004 letter to the city, counsel representing Broad Jackson offered to take primary responsibility for the interest payments of a loan the city was to obtain from Sky Bank to finance the demolition project.
 {¶ 121} Furthermore, Broad Jackson was afforded an opportunity to be heard throughout the pendency of the proceedings. At any time Broad Jackson could have invoked the trial court's continuing jurisdiction in this matter and sought injunctive relief to prevent the demolition, but it did not. Given all the facts and circumstances surrounding this case, Broad Jackson cannot now be heard to complain that it did not have notice.
 {¶ 122} Whether Broad Jackson Acquired the Subject Property Free andClear of All Encumbrances. *Page 26 
 {¶ 123} Broad Jackson also asserts the claim that it acquired the subject property free and clear of all encumbrances, on the ground that the city had not placed the demolition costs on the tax duplicate when Broad Jackson purchased the property from Sky Bank. In support of this claim, Broad Jackson cited Miller v. Thorndyke (1971),30 Ohio App.2d 71, paragraph two of syllabus, for the proposition that a demolition assessment is not effective when the demolition lien is not entered on the tax duplicate until after the sheriffs sale.
 {¶ 124} In Thorndyke, a Cincinnati City Ordinance levied an assessment against a real property for demolition costs, but the city failed to certify the assessment to the county auditor and to enter it on the county tax duplicate before the property was sold at a sheriffs sale. The appellate court held that the purchaser of the property bought it free of the alleged lien, because the city did not timely certify the demolition costs to the county auditor and, as a result, the demolition lien was not entered on the tax duplicate, as statutorily required.
 {¶ 125} Thorndyke is inapposite, as a crucial aspect of the instant case distinguishes it from that case. There, the purchaser of the property did not have notice or knowledge of the demolition. Upon appeal, the First Appellate District affirmed the trial court's finding that "the purchaser of land at a sheriffs sale without notice of ademolition lien which had not been caused to appear on the tax duplicate takes the property free of the demolition assessment." Id. at 74. (Emphasis added.)
 {¶ 126} Thorndyke is not applicable to the instant case, because, as we have determined, Broad Jackson had notice, either actual or constructive, of the pending *Page 27 
demolition when it purchased the subject property. Broad Jackson's reliance on this case is misplaced.
 {¶ 127} Broad Jackson in addition cited the First Appellate District's decisions in Hilling v. Cincinnati (1936), 54 Ohio App. 293, and Bernhard v. O'Brien (1953), 97 Ohio App. 359, which appliedHilling, for the proposition that "a mortgagee in a foreclosure action who acquires title by virtue of a sheriff's deed succeeds to all the rights and holds the property free and clear of all claims of all parties." Id. at paragraph one of syllabus. Broad Jackson's reliance in Hilling and its progeny is likewise misplaced.
 {¶ 128} In Hilling, a municipality levied a street assessment upon certain real estate but failed to collect it. Subsequently, a mortgage was executed upon the property, and, when the mortgagor defaulted, the bank instituted a foreclosure action, in which the county auditor and county treasurer were made parties. These county officials however failed to answer. The trial court then ordered the property sold in a sheriff's sale and the subsequent owner commenced a suit to enjoin the collection of the street assessment.
 {¶ 129} The First Appellate District held that "[a] mortgagee in a foreclosure action who acquires title by virtue of a sheriff's deed succeeds to all the rights and holds the property free and clear of all claims of all parties to the action. Thus, a municipality having beenmade a party to the action and having failed to answer will be enjoinedfrom asserting a lien for a street assessment on the property." Id. at paragraph one of syllabus. (Emphasis added.)
 {¶ 130} The instant case is factually distinguishable fromHilling. There, the assessment was levied prior to the foreclosure action. In the instant case, the subject *Page 28 
property was declared to be a public nuisance and the property owner was ordered to abate it only after the court ordered the judicial sale of the property in the foreclosure action. Furthermore, although the City of Conneaut was named a party to the foreclosure action, it was named in its capacity as a judgment debtor due a loan it made to CTI, totally unrelated to the nuisance action.
 {¶ 131} Thus, in this case, the city's right to have the nuisance abated by the property owner or its right to place the demolition costs upon the tax duplicate did not arise until after the foreclosure decree. In Hilling, it was important to the appellate court that the county auditor and county treasurer were named parties in the foreclosure action but failed to answer in protection of the city's interests as to the street assessment.
 {¶ 132} In the instant case, however, the city could not be expected to assert its interests regarding the demolition assessment since those interests were not in existence at the time the court entered the foreclosure decree. Therefore, unlike in Hilling, the judicial sale of the subject property in this case pursuant to the Judgment Decree in Foreclosure does not extinguish the city's right to have the nuisance abated by the property owner or to have the demolition costs placed upon the tax duplicate.
 {¶ 133} Therefore, construing the evidence in this case most strongly in favor of Broad Jackson, we conclude no genuine issue of material fact exists and Mr. Orrenmaa is entitled to the injunctive relief he sought. The first assignment of error is overruled.
 {¶ 134} Damages *Page 29 
 {¶ 135} In the second assignment of error, Broad Jackson claims thetrial court erred in awarding damages to the city.
 {¶ 136} Standard of Review for Award of Damages
 {¶ 137} "[A] reviewing court will not disturb a trial court's decision regarding its determination of damages absent an abuse of discretion."Williams v. Kondziela, 11th Dist. No. 2002-L-190, 2004-Ohio-2077, ¶ 19, citing Roberts v. United States Fid. Guar. Co. (1996),75 Ohio St.3d 630, 634. "The term discretion itself involves the idea of choice, of an exercise of will, of a determination made between competing considerations." Kondziela at ¶ 19, quoting Roth v. Habansky, 8th Dist. No. 82027, 2003-Ohio-5378. An abuse of that discretion implies that the court exhibited an unreasonable, arbitrary, or unconscionable attitude in rendering its judgment. See Blakemore v. Blakemore (1983),5 Ohio St. 3d 217, 219.
 {¶ 138} First, Broad Jackson claims the trial court was unreasonable and arbitrary in not finding the city unnecessarily delayed the demolition and therefore prejudiced Broad Jackson. Broad Jackson argues that the city should have demolished the Astatic Building and placed the costs on the tax duplicate prior to Broad Jackson's acquisition of the property from Sky Bank. It argues that if the city had timely demolished the Astatic Building, the demolition costs would have been placed on the tax duplicate, and Sky Bank, the purchaser at the sheriff's sale, would have been responsible for the costs.
 {¶ 139} Regarding this claim, the record contains testimony by the city's Law Director, Ms. Lamer, that the city had been actively negotiating with Sky Bank after it acquired the subject property toward a resolution of the demolition matter. She also *Page 30 
testified that the city made efforts to obtain funds for the demolition project prior to Broad Jackson's acquisition of the property, but the city could not demolish the building until it obtained a loan with favorable terms.
 {¶ 140} The city commenced the demolition after obtaining the necessary funds, two years after it was authorized to do so by the court in the September 26, 2002 judgment entry. In Skiffey v. City ofYoungstown (Dec. 10, 2001), 7th Dist. No. 00 C.A. 56, 2001 Ohio App. LEXIS 5617, *5-6, the Seventh Appellate District concluded that a two-year time period between the issuance of a demolition notice and the beginning of the demolition was "entirely reasonable" because of funding, resources, and the bidding process that the city must employ when it solicited bids for the destruction of some dilapidated structures. Likewise, we conclude the trial court in the instant case was not unreasonable or arbitrary in finding the city did not unnecessarily delay the demolition project. In any event, Broad 
Jackson cannot claim it was prejudiced by any alleged delay because, as we have determined, it had knowledge at the time it purchased the property of the court order requiring the costs to become a lien on the property.
 {¶ 141} Next, Broad Jackson claims the city (1) failed to explore less costly alternatives such as refurbishing the Astatic Building; (2) failed to encourage the submission of lower bids; and (3) failed to keep the demolition costs reasonable and within budget. Broad Jackson therefore contends the trial court abused its discretion by finding that the city did not fail to mitigate the damages.
 {¶ 142} Mitigation is a concept for calculating damages in contract law. See Frenchtown Square P'ship v. Lemstone, Inc. (2003),99 Ohio St.3d 254, 257 ("[U]nder the common law of contracts, mitigation is a fundamental tenet of a damage calculus. *Page 31 
Contracts are the mutual exchange of promises, with each party holding an expectation of certain obligations and benefits. Thus, contract law acknowledges that mitigation, otherwise known as the doctrine of avoidable consequences, may justly place an injured party `in as good a position had the contract not been breached at the least cost to the defaulting party'").
 {¶ 143} Broad Jackson fails to cite to any authority for the applicability of the doctrine of "avoidable consequences", or mitigation, in the present context, and we are aware of none.
 {¶ 144} However, even if we were to apply the doctrine of "avoidable consequences" to the instant matter, we note that the doctrine "requires only reasonable, practical care and diligence, not extraordinary measures to avoid excessive damages." Provident Bank v. Barnhart (1982),3 Ohio App.3d 316, 320, citing 22 American Jurisprudence 2d, Damages, Section 32 (1965); 30 Ohio Jurisprudence 3d, Damages, Section 17 (1981).
 {¶ 145} Regarding the city's alleged failure to explore alternatives to demolish the Astatic Building, Broad Jackson points to a proposal made by Mr. Orrenmaa in 2002 in a memorandum, which suggested the possibility of refurbishing the building and turning it into a parking deck. This evidence is irrelevant, because the subsequent September 26, 2002 judgment entry declared the building a public nuisance to be demolished by either CTI or the city. Pursuant to that judgment, the city had no duty to explore other alternatives.
 {¶ 146} Regarding the city's alleged failure to encourage the submission of lower bids, the record reflects the testimony by Shawn Aiken, the Project Manager of the *Page 32 
demolition project, that the city published a legal notice in the local newspaper, the Ashtabula County Star Beacon, which invited all companies to bid in the project. Furthermore, Broad Jackson did not present any contractors to testify at the damages hearing to show that a lower quote or estimate could have been obtained by the city in the bidding process.
 {¶ 147} Regarding the city's alleged failure to keep the demolition costs reasonable and within budget, the hearing transcript reflects the testimony by Mr. Aiken that the demolition costs were almost the same as the city's projections, after factoring in construction contingency, engineering, and contract administration costs.
 {¶ 148} Therefore, even if we were to apply the principle of mitigation in this case, the evidence does not demonstrate Broad 
Jackson's claim that the city failed to take measures to avoid excessive damages.
 {¶ 149} Finally, Broad Jackson contends that the city failed to monitor the demolition project and to ensure that the costs incurred were reasonable and necessary.
 {¶ 150} At the hearing, John Williams, the city's Finance Director, testified to all of the costs incurred by the city in the demolition of the Astatic Building and the removal of asbestos from the building. Broad Jackson, however, did not present testimony to show the demolition and asbestos abatement were not done in accordance with the specifications of the contract.
 {¶ 151} Broad Jackson also takes issue with the fees paid to outside consultants. In particular, it challenges the fees paid to pay C.T. Consultants. The hearing transcript reflects Mr. Aiken's testimony that his outside employer, C.T. *Page 33 
Consultants, had a contract with the city for engineering services in exchange for a monthly fee. However, for certain construction projects C.T. Consultants was paid a percentage of the project costs. In the instant project, C.T. Consultants agreed to perform their services at one-half of their usual percentage of compensation.
 {¶ 152} Broad Jackson also challenges the fees paid to Squire, Sanders Dempsey, the city's bond counsel, for its review of a bond in connection with the demolition project. As to this claim, Mr. Williams, the city's Finance Director, testified that the bond was required by law for the city to undergo the demolition process. In its judgment on damages, the trial court stated: "Since the City of Conneaut did not have sufficient resources to fund the project, it was necessary that a loan be taken out with Sky Bank; however, in order to do that, the City had to engage the service of Squires, Sanders Dempsey, a law firm that represents counties, municipalities, and various state agencies, for the bond issued by the city for the demolition project, as the city cannot simply go out and borrow money on the signature of the city manager or mayor. It is unlikely that none of these steps would need to be taken by a private entity, such CTI Audio or Broad Jackson, LTD, had they proceeded with a demolition." Given the testimony at the hearing regarding this issue, the court did not abuse its discretion in its reasoning and finding.
 {¶ 153} Broad Jackson also contends that the court erred in failing to offset the amount of judgment equal to the amount of a Community Development Block Grant received by the city. The hearing transcript reflects Mr. Williams' testimony that the Block grant allocates yearly an amount between $70,000 and $80,000 to the city for a particular project which the city deems necessary for the community. In 2003 the *Page 34 
money was allocated toward the Astatic Building demolition. Mr. Williams testified, however, that for that year there were other projects which the money could have been used for, including a new chlorination system at the city's water plant, the lack of which was a danger to the surrounding residents.
 {¶ 154} Regarding this claim, the trial court found that the grant that the city received "could have been applied for other purposes and the city should be reimbursed for its application to the demolition project." Again, we find no abuse of discretion in this determination.
 {¶ 155} Lastly, Broad Jackson contends the court abused its discretion in permitting leading questions and speculative testimony by Mr. Williams as to the alternative uses of the grant money.
 {¶ 156} A trial court has discretion to allow leading questions on direct examination. State v. Drummond, 111 Ohio St.3d 14,2006-Ohio-5084, at ¶ 138, and, its discretion will not be overturned on appeal absent a clear abuse of that discretion. Id.
 {¶ 157} Here, the city's counsel asked Mr. Williams as to the nature of the block grant and examples of other necessary community projects the grant could have been used for in 2003, other than the Astatic demolition project. As this information is pertinent to whether the amount of damages should be offset by the grant money, the trial court did not abuse its discretion in allowing this line of questioning and permitting Mr. Williams to testify from his personal knowledge regarding other urgent community projects to which the grant money could have been allocated.
 {¶ 158} Based on the evidence presented at the damages hearing, we do not find the trial court's determination of damages in this case to be unreasonable, arbitrary, or *Page 35 
unconscionable, and therefore we overrule Broad Jackson's second assignment of error.
 {¶ 159} The judgment of Ashtabula County Court of Common Pleas is affirmed.
COLLEEN MARY OTOOLE, J., TIMOTHY P. CANNON, J., concur.
[1] In the judgment, the court determined the priority of the various lien holders, stating that the property was to be "sold free and clear of the interests of Plaintiff and Defendants of whatever nature or kind."
[2] 341 Harbor Street is apparently the street address of the modern buildings leased and occupied by Omnitronics.
[3] R.C. 3781.01 states, in part: "(A) Chapters 3781 and 3791 of the Revised Code do not prevent the legislative authority of a municipal corporation from making further and additional regulations, not in conflict with those chapters or with the rules the board of building standards adopts.
R.C. 3781.15 states: "The construction, use, or occupation of any building which is declared by sections 3781.06 to 3781.18, inclusive, section 3781.031 [3781.03.1], and section 3791.04 of the Revised Code, to be a public nuisance may be enjoined in a proceeding instituted in the name of any department or officer mentioned in section 3781.03 of the Revised Code in the court of common pleas of the county in which said building is or will be situated."
[4] The address for the building here is apparently a clerical error. The citation listed 227 Jackson Street as the address for the Astatic Building.
[5] Although the trial court granted summary judgment against Broad Jackson and Omnitronics, the damages were awarded against CTI and Broad Jackson. Therefore, Broad Jackson is the only party raising the second assignment of error.
[6] Although the citation was inadvertently addressed to "William Ross of Omnitronics, 341 Harbor Street," instead of "Lawrence Ousky of Omnitronics, 341 Harbor Street," Mr. Ousky, as president of Omnitronics, undoubtedly received the notice, as he participated in a settlement of the matter on behalf of Omnitronics, resulting in the consent judgment entry. *Page 1